IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                                      ) | CASE NO. 2:09-CR-118-WKW [WO] |
| ) | |
| DAVID WATERMAN NORMAN, JR.    ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Defendant David Waterman Norman Jr. is charged in a two-count indictment with knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (Doc. # 1.) This cause is before the court on Mr. Norman's motion to suppress (Doc. # 16) and the parties' various responses and supplemental briefs supporting or opposing the motion (Docs. # 34, 40, 50, 54, 57, 58). The Magistrate Judge conducted a hearing on the motion (Docs. # 45, 47) and filed a Recommendation on July 6, 2010 (Doc. # 60), recommending that the motion be denied in whole. Mr. Norman filed objections to the Recommendation on July 19, 2010. (Doc. # 69.)

Pursuant to 28 U.S.C. § 636(b)(1), the court conducts a *de novo* review of the portions of the Recommendation to which the objections were made. Based upon a *de novo* review, the objections are due to be overruled in part and sustained in part, and the Recommendation is due to be adopted in part, rejected in part, and modified in part.

## II. DISCUSSION

**A.    Reasonable Expectation of Privacy (Objections 7, 8, and 9)**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  The protections of the Fourth Amendment only extend to places where "the defendant can claim a 'reasonable expectation of privacy.'" *United States v. Berrong*, 712 F.2d 1370, 1373 (11th Cir. 1983) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).  "'[O]nly individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search.'" *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (quoting *United States v. Cooper*, 203 F.3d 1279, 1283-84 (11th Cir. 2000)).  A reasonable expectation of privacy is one "'that society is prepared to recognize as "reasonable."'" *Oliver v. United States*, 466 U.S. 170, 177 (1984) (quoting *Katz*, 389 U.S. at 361).  "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351.

The constitutionality of these warrantless computer searches[1] boils down to one issue: Whether Mr. Norman had a reasonable expectation of privacy in the files searched.  Mr. Norman focuses primarily on the technology used by the Government, arguing that the Magistrate Judge erroneously failed to address the "unique nature of the methods used" by

---

[1] A warrant to seize the computer was issued based upon probable cause arising out of the warrantless search of the shared-file program of the computer.

2

law enforcement under the doctrine established in *Kyllo v. United States*, 533 U.S. 27 (2001). (Doc. # 69, Objection 7.)  In so arguing, Mr. Norman has put the cart before the horse.

In *Kyllo*, the issue was whether the use of a thermal imaging device to measure heat emanating from a home constituted a "search" under the Fourth Amendment. 533 U.S. at 29. The Supreme Court answered in the affirmative and, because the search was conducted without a warrant, reached the now-familiar conclusion that the warrantless search of the home was presumptively unreasonable and, hence, presumptively unconstitutional. *Id.* at 40. Contrary to Mr. Norman's contentions, the Court did not hold that "where unique law enforcement technology obtains private information which is not obtainable by the general public, *a Fourth Amendment violation has been established*."  (Doc. # 69, Objection 7 (emphasis added).)  That characterization of *Kyllo* is markedly off-base.  The Court simply addressed the contours of a Fourth Amendment "search," finding that surveillance by use of "a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion," falls within that definition. *Kyllo*, 533 U.S. at 40. Whether a "search" is constitutional is a separate question.  Moreover, the constitutionality of a "search" is not at issue unless the defendant first establishes that he or she had a reasonable expectation of privacy in the area(s) searched.  In other words, Mr. Norman must establish that he has standing to assert a Fourth Amendment violation in the first place.  This he cannot do.

In his seventh and eighth objections, Mr. Norman asserts that he had an objective expectation of privacy in the files searched and then proceeds to analyze, once again, whether

3

a "search" occurred. As discussed above, whether a "search" occurred is not the proper inquiry. The cases Mr. Norman cites simply support the uniformly-recognized rule that, generally, one has a reasonable expectation of privacy in one's computer. (Doc. # 69, Objection 8.) Instead of directly addressing how the presence of file-sharing software affects that expectation of privacy, Mr. Norman attempts to undermine the factual and legal bases of the Magistrate Judge's Recommendation. (*See* Doc. # 69, Objections 1-6, 10.) Mr. Norman argues that the Magistrate Judge incorrectly found that he did not have a reasonable expectation of privacy in the files searched, yet fails to argue why the opposite is true, *i.e.*, that he *did* have a reasonable expectation of privacy in the files searched. As the Government and Magistrate Judge note, courts addressing this issue have uniformly held that there is no reasonable expectation of privacy in files made available to the public through peer-to-peer file-sharing networks. *See United States v. Stults*, 575 F.3d 834, 842-843 (8th Cir. 2009); *United States v. Ganoe*, 538 F.3d 1117, 1127 (9th Cir. 2008); *United States v. Perrine*, 518 F.3d 1196, 1205 (10th Cir. 2008); *United States v. Laduea*, No. 09-40021-FDS, 2010 WL 1427523, at *4 (D. Mass. Apr. 7, 2010); *United States v. Brese*, No. CR-08-52-D, 2008 WL 1376269, at *2 (W.D. Okla. April 9, 2008). Mr. Norman cites no case law – and the court is aware of none – stating the opposite conclusion.[2]

Mr. Norman also incorrectly asserts that the Government has the burden to establish "the relinquishment of the expectation of privacy." (Doc. # 69, Objection 9.) He contends that the

---

[2] The Magistrate Judge's discussion of *Rehberg v. Paulk*, 611 F.3d 828, 846 (11th Cir. 2010), is not adopted, as the portion of the case upon which the Magistrate Judge relied has subsequently been withdrawn.

4

Government must prove that Mr. Norman voluntarily "abandoned or waived" his reasonable expectation of privacy. However, the cases on which Mr. Norman relies for this proposition are inapposite. For example, in *United States v. Harris*, the Eleventh Circuit expressly declined to "resolve whether and to what extent a taxicab passenger enjoy[ed] a legitimate expectation of privacy" because the driver waived his constitutional rights by voluntarily consenting to a search of the vehicle. 526 F.3d 1334, 1339 (11th Cir. 2008). In *United States v. Ramos*, the issue was whether a tenant "relinquished his interest in [an apartment] (and his property therein) so that he could no longer retain a reasonable expectation of [privacy]." 12 F.3d 1019, 1024 (11th Cir. 1994). The Eleventh Circuit held that "[i]n determining whether there has been abandonment, the critical inquiry is whether the person prejudiced by the search . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Id.* at 1022 (internal quotations omitted). In *Harris*, the court held that the Government had the burden to establish that the defendant waived his Fourth Amendment rights, and in *Ramos*, the court held that the Government had the burden of proving that the defendant abandoned his property interest. These cases do not stand for the proposition that the Government has the burden of establishing that the defendant does not have (or "lost") his or her reasonable expectation of privacy. Mr. Norman conflates waiver or abandonment of a *right* (constitutional or property) with waiver or abandonment of an *expectation* (of privacy).

5

**B.     The Magistrate Judge's Factual Findings**

*1.     Objection 4: LimeWire*

Mr. Norman objects to the Magistrate Judge's finding that Mr. Norman's computer contained "a version of LimeWire." (Doc. # 69, Objection 4.) However, Lieutenant James Compton testified that the investigative software only works when the suspect computer is "logged in," has the "software running," and has "the shared file folder activated." (Hr'g Tr. 21 (Doc. # 47).) Thus, for the investigative search to work, Mr. Norman's computer had to have file-sharing software installed and enabled. This evidence is sufficient to support the Magistrate Judge's finding that Mr. Norman's computer contained file-sharing software (even if the exact version of said software was not known).

*2.     Objection 6: Weight of Testimony*

In his sixth objection, Mr. Norman contends that "[n]o weight should be given to the 'expert' testimony provided by [Mr.] Trotter, [Mr.] Trawick, and [Mr.] Compton regarding the functioning of peer-to-peer networks and the unique law enforcement software used in this case." (Doc. # 69, Objection 6.) As to the latter point, the court has already articulated why the technical aspects of law enforcement software are not at issue. As to the former point – that no weight should be given to these witnesses' testimony regarding Mr. Norman's software – that objection is due to be overruled. These witnesses testified as fact witnesses, and there was no evidence contradicting the facts to which they testified.

### *3.    Objections 1, 2, 3, and 5*

Finally, Mr. Norman points to several instances where the Magistrate Judge mischaracterized the evidence. Objections 1, 2, 3 and 5 are well-taken; however, the fact that Mr. Compton simply "downloaded a report from IDN Toolkit" (Doc. # 69, Objection 1), that the computers were identified as "probably hav[ing] [child pornography] files for trade" (Doc. # 69, Objection 2), that the historical report from the IDN Toolkit was admitted for a limited purpose (Doc. # 69, Objection 3), or that "[t]here was no evidence of any [actual] sharing, trading, or 'advertising by Mr. Norman'" (Doc. # 69, Objection 5), does not change the end result. The other facts derived from the evidentiary hearing are sufficient to support the Magistrate Judge's Recommendation that the motion to suppress the computer searches be denied.

## C.    Narrow Holding

The Magistrate Judge concluded that "[t]he presence of the enabled file sharing software, LimeWire, on [Mr. Norman's] computer defeats any objectively reasonable expectation of privacy he had in his computer." (Doc. # 60, at 8 (emphasis removed).) This court declines, however, to reach such a broad conclusion. The only files searched in this case were located in a *shared* file from which any person with a computer having similar file-sharing capabilities could download, copy, and/or view the contents. No other file on the computer was subject to the contested searches. Hence, it need not be decided whether the presence and activation of file-sharing software remove "any objectively reasonable expectation of privacy" in the

computer as a whole. The holding is limited to shared files, and the Recommendation is modified in this respect.[3]

**D.     The Interrogation**

Lastly, Mr. Norman objects to the Magistrate Judge's finding that "'no evidence supports a conclusion that law enforcement officers coerced [Mr.] Norman into giving a statement,'" and to the Magistrate Judge's denial of an evidentiary hearing on the "legality of Mr. Norman's interrogation." (Doc. # 69, Objection 13 (quoting Doc. # 60, at 16).)

In his Recommendation, the Magistrate Judge relied upon *United States v. Richardson*, 764 F.2d 1514 (11th Cir. 1985), to deny Mr. Norman's request for an evidentiary hearing on whether his statements to police were knowingly and voluntarily made. The Magistrate Judge concluded that Mr. Norman "failed to sufficiently 'allege facts which, if proven, would provide a basis for relief.'" (Doc. # 60, at 14 (citing *Richardson*, 764 F.2d at 1527).) It is true that the Magistrate Judge stated later that "[i]n this case, no *evidence* supports a conclusion that law enforcement officers coerced [Mr.] Norman into giving a statement." (Doc. # 60, at 16 (emphasis added).) But, read in context, it is clear that he analyzed whether to hold an evidentiary hearing based upon Mr. Norman's allegations (or the lack thereof): "Absent *allegations* of coercive tactics to obtain a statement, a confession will not be deemed involuntary." (Doc. # 60, at 16 (emphasis added); *see also* Doc. # 60, at 14 ("It is within the

---

[3] Even if this question were presented, however, the court would be hard-pressed to find a rationale in an Eleventh Circuit holding for finding that Mr. Norman did not maintain a reasonable expectation of privacy in the files located outside the shared file. *But see United States v. Heckenkamp*, 482 F.3d 1142, 1147 (9th Cir. 2007), and *United States v. Ladeau*, No. 09-40021, 2010 WL 1427523 (D. Mass. April 7, 2010), which seem to contradict this.

court's discretion to ascertain whether the defendant has asserted sufficient facts to justify an evidentiary hearing." (citing *Richardson*, 764 F.2d at 1514)).)

The more salient issue is not whether the absence of evidence or the absence of facts served as the basis for the denial of the request for an evidentiary hearing, but whether the standard in *Richardson* upon which the Magistrate Judge relied to deny an evidentiary hearing is applicable here. That standard concerned the trial court's denial of a request for an evidentiary hearing on claims that evidence seized during the search of a house violated the Fourth Amendment. In the Fourth Amendment context, a motion to suppress grounded in only "general or conclusory assertions" need not be entertained, and a hearing is not required: "In short, the motion [for suppression of evidence obtained during a search] must allege facts which, if proven, would provide a basis for relief." *Richardson*, 764 F.2d at 1527. "Once a defendant has failed to make a proper pretrial request for suppression [of search evidence], the opportunity is waived unless the district court grants relief for good cause shown." *Id.* (citing Fed. R. Crim. P. 12(b)(3), 12(f)).

The *Richardson* court declined to establish, however, the standard for obtaining an evidentiary hearing on a challenge to the voluntariness of a statement[4]:

> We do not decide whether a request for a hearing to determine voluntariness of statements, like a request for a suppression hearing under the Fourth Amendment, must be requested in specific and non-conclusory terms, or whether Richardson made an adequate motion in this case. Nor do we address the issue of whether evidence at trial established the admissibility of the evidence and obviated the

---

[4] "The Fifth Amendment prohibits the use of an involuntary confession against a defendant in a criminal trial." *United States v. Thompson*, 422 F.3d 1285, 1295 (11th Cir. 2005).

9

>need for a hearing. For even assuming that the trial court erred in admitting these post-arrest statements of Richardson, the error was harmless beyond a reasonable doubt.

*Id.* at 1528 (internal footnote omitted). The reliance on *Richardson* as establishing the threshold for obtaining an evidentiary hearing on claims challenging the voluntariness of a confession, thus, is not on solid footing.

The vast majority of cases in this circuit addressing a contest of the voluntariness of a statement do not discuss the standard for obtaining an evidentiary hearing, but merely recite that a hearing was held. In *United States v. Davidson*, decided one month after *Richardson*, however, the issue was whether the trial court erred in failing to hold an evidentiary hearing to determine the voluntariness of a defendant's statement. *See* 768 F.2d 1266 (11th Cir. 1985). The defendant, who was charged with a controlled substance offense, filed a pretrial motion to suppress oral statements he made to Drug Enforcement Administration ("DEA") agents on grounds that the statements were elicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and were not the product of a knowing and voluntary waiver of Fifth Amendment rights. *Id.* at 1269. The district court denied the defendant's pretrial motion to suppress the statements and declined to grant an evidentiary hearing on the voluntariness issue. *See id.* It also refused to entertain the voluntariness challenge during the trial. *See id.* On appeal from his conviction, the defendant asserted that the district court erred in denying his motion to suppress his oral statements without an evidentiary hearing.

The *Davidson* court explained that, under *Jackson v. Denno*, 378 U.S. 368, 376 (1964), "a defendant has a constitutional right to a fair hearing and an independent and reliable determination of the voluntariness of a confession before the confession is allowed to be heard by the guilt determining jury." *Davidson*, 768 F.2d at 1270. "Such a *Jackson v. Denno* hearing is constitutionally mandated for a defendant who timely urges that his confession is inadmissible because not voluntarily given." *Id.* (citing *Smith v. Estelle*, 527 F.2d 430, 431 n.3 (5th Cir. 1976)); *see also United States v. Francisco-Gutierrez*, 249 F. App'x 135, 140-41 (11th Cir. 2007) (citing *Davidson* with approval). "The voluntariness hearing 'must afford the defendant an opportunity to testify regarding the inculpatory statement out of the jury's presence without prejudice to his right not to take the stand in his defense.'" *Davidson*, 768 F.2d at 1270 (citing *Jarrell v. Balkcom*, 735 F.2d 1242, 1252-53 (11th Cir. 1984)).

The *Davidson* court held that the district court erred by failing to hold a *Jackson v. Denno* hearing, either prior to or outside the presence of the jury at trial, to determine the voluntariness of the defendant's statements. The defendant alleged "that his confession was involuntary in that it resulted from conversations with the DEA agents regarding 'potential cooperation' and 'potential disposition' of his case," and the government rebutted the allegations by asserting that "the confession was made after [the defendant] voluntarily waived his right to remain silent." 768 F.2d at 1271. These allegations "presented a factual issue as to voluntariness" that required a hearing. *Id.* "Such a hearing consumes little time and should

11

be held whenever a defendant alleges facts indicating that his self-incriminating statements were obtained involuntarily."[5]  *Id.*

Here, Mr. Norman alleges in his motion to suppress that "[t]he interrogation of Mr. Norman . . . did not result from a knowing and voluntary waiver of his Fifth Amendment rights, and was the product of the coercion and apparent authority of the eight officers" who held Mr. Norman in his residence for "several hours." (Doc. # 16, at 4-5, 9.)  There is no contention by the Government that the motion was untimely or that Mr. Norman's allegations are insufficient to raise an issue as to whether his statements were voluntarily made.  Rather, the Government disputes Mr. Norman's allegations, arguing that he was not under arrest when questioned, that he knowingly and voluntarily waived his *Miranda* rights, and that he spoke to the officers "of his own free will." (Doc. # 40, at 11.)  As in *Davidson*, these competing positions create a factual question as to the voluntariness of Mr. Norman's statements.  The prudent solution, and the one that favors judicial economy, is to permit a pretrial evidentiary hearing to flesh out the totality of the circumstances and to resolve the factual issues.  No authority supporting a contrary conclusion has been cited by the Government.

---

[5] The *Davidson* court held that the "[t]he proper remedy for erroneously failing to hold a *Jackson v. Denno* hearing is to remand to the trial court for a post-trial hearing on the issue of voluntariness." 768 F.2d at 1270 (citing *Jackson*, 378 U.S. at 394).  The Eleventh Circuit explained, however, that it would not remedy a district court's failure to hold a *Jackson v. Denno* hearing unless the defendant "allege[d] facts which would, if proven true, indicate the involuntariness of his confession."  *Id.* (citing *Procunier v. Atchley*, 400 U.S. 446, 451 (1971)).  In *Davidson*, the defendant was not entitled to a remand for a hearing because he had failed to "allege[] a version of events which, if true, would require the conclusion that his confession was involuntary." *Id.* at 1272.

The denial of an evidentiary hearing, therefore, is rejected. Mr. Norman's twelfth and thirteenth objections, to the extent that they challenge the failure of the Magistrate Judge to conduct an evidentiary hearing on the issue of the voluntariness of Mr. Norman's statements, are due to be sustained.

### III. CONCLUSION

Based on the foregoing, it is ORDERED that

(1)   the Recommendation of the Magistrate Judge (Doc. # 60) is ADOPTED, as modified in part, with one exception. It is DENIED as to the Magistrate Judge's denial of an evidentiary hearing on Mr. Norman's claim that his statements were not voluntarily made. The motion to suppress (Doc. # 16), thus, is REFERRED back to the Magistrate Judge for the purpose of conducting an evidentiary hearing and entering a further recommendation on the limited issue of the voluntariness of Mr. Norman's statements;

(2)   Mr. Norman's objections to the Recommendation are OVERRULED in part and SUSTAINED in part, as set forth herein; and

(3)   Mr. Norman's motion to suppress (Doc. # 16) is GRANTED in part and DENIED in part, as set forth herein.

DONE this 24th day of September, 2010.

    /s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE